**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
_____ x
**FARI MURRAY,**
**CARLOS PALAGOACHI,**
**and**
**WARREN PAYNE,**
*individually and on behalf of others similarly*
*situated,*                                                                   **Case Number 20-1427**

                                                                                        **DEMAND FOR JURY TRIAL**
                                                               **Plaintiffs**                **COLLECTIVE ACTION**
                                                                                  **UNDER 29 U.S.C. § 216(b)**

-against-


**UNITED PARCELS SERVICE, INC.**

                                                         **Defendants.**
_____ x


Plaintiff Fari Murray ("Plaintiff Murray" or "Mr. Murray"), Plaintiff Carlos Palagoachi ("Plaintiff Palagoachi" or "Mr. Palagoachi"),  Plaintiff Warren Payne, and ("Plaintiff Payne" or "Mr. Payne") (Collectively, "Plaintiff's") individually and on behalf of others similarly situated, by and through their attorney, Tyrone Blackburn Esq, upon their knowledge and belief, and as against   United Parcels Service, Inc.   d/b/a UPS, ("Defendant Corporation" or "Defendants") alleges as follows:


### NATURE OF ACTION

1. This is an action for monetary and declaratory relief to redress Defendants' violation of Plaintiffs' workplace rights. Plaintiffs' seek relief for employment discrimination in violation of Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA"), for violations of the N.Y. Labor Law § § 190 et seq. and 650 et seq. (The "NYLL"), overtime wage orders of the New York Commissioner of Labor codified at N. Y. Comp. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), for violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Equal Pay Act of 1963, and the New York Equal Pay Act.

2. At all times relevant to this Complaint, Defendants maintained a policy and practice of knowingly and willfully compensating black On the Road Supervisors ("Supervisors"), less than their Caucasian colleagues in violation of federal and state equal pay laws.

3. At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiff's, and other similarly situated employees, to work an excess of forty (40) hours per week without providing the overtime compensation required by federal and state law and regulations.

4. Plaintiff's now bring this action on behalf of themselves, and other similarly situated employees, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA"), and for violations of the N.Y. Labor Law § § 190 et seq. and 650 et seq. (The "NYLL"), and overtime wage orders of the New York Commissioner of Labor codified at N. Y. Comp. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

5. Plaintiffs seek certification of this action as a collective action on behalf of themselves individually, former employees, and all other similarly situated employees who elect to opt-in to this action pursuant to FLSA, 29 U.S.C. §§ 201 *et seq*., and specifically, the collective action provision of 29 U.S.C. § 216(b).

## ADMINISTRATIVE PROCEDURES

6. Plaintiff Murray filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") for his Title VII race wage discrimination claim. On December 18, 2019, Plaintiff Murray was provided a Notice of Right to Sue by the EEOC.

7. All conditions precedent to the filing of suit have been performed or have occurred.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

9. Venue is proper in this district under 28 U.S.C § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants

maintain several branches and offices within this district, and Defendants operate a package delivery business located in this district. Further, Plaintiffs are or were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

10. Plaintiff Fari Murray is an adult individual residing in Westchester County, New York.

11. Plaintiff Carlos Palagoachi is an adult individual residing in Bronx County, New York.

12. Plaintiff Warren Payne is an adult individual residing in Kings County, New York.

13. Plaintiff Murray was employed by Defendant United Parcels Service from approximately January 4, 2003 to October 8, 2018.

14. Plaintiff Palagoachi was employed by Defendant United Parcels Service from approximately October 2017 until May 2018.

15. Plaintiff Payne was employed by Defendant United Parcels Service from approximately August 2017 until June 2018.

16. Plaintiff Payne consents to be a party plaintiff pursuant to 29 U.S.C. § 216(b), and brings these claims based upon the allegations herein as a representative party of a prospective class of similarly situated individuals under 29 U.S.C. § 216(b).

*Defendant*

17. At all relevant times, Defendants own, operate, or control a package delivery service business, located at 10401 Foster Avenue, Brooklyn, NY 11236 under the name "United Parcel Service, Inc."

## COLLECTIVE ACTION ALLEGATIONS

18. Plaintiff's bring the First Cause of Action, an FLSA claim, on behalf of themselves and all similarly situated persons who work or have worked as Delivery Driver's for Defendant Corporation who elect to opt-in to this action (the "FLSA Collective").

19. Defendants are liable under the FLSA for, inter alia, failing to properly compensate Plaintiff's and the FLSA Collective.

20. Consistent with Defendants' policies and patterns or practices, Plaintiff's and the FLSA Collective were not paid the proper premium overtime compensation of one and a half times their regular rates of pay for all hours worked beyond 40 hours per workweek.

21. All of the work Plaintiff's and the FLSA Collective have performed has been assigned by Defendant, and/or Defendant have been aware of all of the work that Plaintiff and the FLSA Collective have performed.

22. As part of their regular business practice, Defendant has intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff's and the FLSA Collective. This policy and pattern or practice includes, but is not limited to, willfully failing to pay their employees, including Plaintiff's and the FLSA Collective, proper premium overtime wages for all hours worked in excess of 40 hours per workweek.

## CLASS ACTION ALLEGATIONS

23. Plaintiff's bring the NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of persons consisting of:

> All persons who work or have worked as delivery drivers for Defendant Corporation in New York State between 2014 and the date of final judgment in this matter (the "Rule 23 Class").

24. The Rule 23 Class Members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

25. Plaintiff's claims are typical of those claims that could be alleged by any Rule 23 Class Member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class Member in separate actions.

26. Plaintiff's and the Rule 23 Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected all Rule 23 Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class Members.

27. Plaintiff's are able to fairly and adequately protect the interests of the Rule 23 Class Members and has no interests antagonistic to the Rule 23 Class Members.

28. Plaintiffs are represented by attorneys who are experienced and competent.

29. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

30. Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff's and the Rule 23 Class Members individually and include, but are not limited to, the following:

   a. Whether Defendants failed to compensate Plaintiff's and the Rule 23 Class for all hours worked at their regular rate(s) of pay;

   b. Whether Defendants failed to compensate Plaintiff's and the Rule 23 Class for hours worked in excess of 40 per work week;

   c. Whether Defendants failed to furnish Plaintiff's and the Rule 23 Class with accurate statements with every payment of wages, as required by the NYLL;

   d. The nature and extent of class-wide injury and the measure of damages for those injuries.

### FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

31. Defendants operate a package delivery service located in the Brooklyn borough of New York City.

32. Defendant act in the interest of itself with respect to employees, pay employees by the same method, and share control over the employees.

33. Defendant possessed substantial control over Plaintiff's, and other similarly situated employees, working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiff's and all similarly situated employees, referred to herein.

34. Defendant employed Plaintiff's, and all similarly situated employees, and are Plaintiff's, and other similarly situated employees, employers within the meaning of 29 U.S.C. 201 et seq. and the NYLL.

35. In the alternative, Defendant constitute a single employer of Plaintiff's and all similarly situated employees.

36. At all relevant times, Defendants were Plaintiff's employer within the meaning of the FLSA and NYLL. Defendants had the power to hire and fire Plaintiff's, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiff's services.

*Individual Plaintiff*

37. Plaintiff Murray is a former employee of Defendants who was employed as an on the road Supervisor.

38. Plaintiff Palagoachi is a former employee of Defendants who was employed as a delivery driver.

39. Plaintiff Payne is a former employee of Defendants who was employed as a delivery driver.

40. Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Murray*

41. Plaintiff Murray was employed by the Defendants from approximately January 4, 2003 until October 8, 2018. Defendants employed Plaintiff Murray as a on the road supervisor.

42. Plaintiff Murray's work duties required neither discretion nor independent judgment. Throughout his employment with Defendants, Plaintiff Murray regularly worked in excess of forty (40) hours per week.

43. Plaintiff Murray is a whistleblower who raised concerns of gender and race-based wage discrimination, Department of Transportation (DOT) violations, massive overtime theft of the drivers and other abuses by UPS management.

44. Plaintiff Murray sustained substantial psychological and monetary injuries as a result of the hostile work environment he was subjected to while an employee of UPS by his former manager, Willie Grey, as well as, UPS senior management.

45. Plaintiff Murray has firsthand knowledge of UPS violating the US Department of Labor's wage and hour laws.

46. Plaintiff Murray is prepared to prove that Willie Gray, as well as, UPS senior management stole hundreds of hours of overtime from a class of drivers. The evidence will show that many

drivers start work at 7am or 9am and they punch out at 10pm or 11pm. That is an average of 15 to 16 hours a day. In a 5-day work week these drivers are working an average of 75 to 80 hours a week. Many of these drivers work 6 days a week. Which brings their hours into the mid 80's and 90's. These hours are not reflected on their paychecks.

47. Plaintiff Murray has evidence of some drivers working 17 to 18-hour shifts. These hours were not reflected on the driver's paychecks.

48. Plaintiff Murray is prepared to reveal the scheme that Willie Gray and UPS senior Management instructed the on the road supervisors to execute as it pertains to stealing overtime hours from the delivery drivers.

49. Plaintiff Murray is prepared to reveal how managers and supervisors would go into the GTS (Global Timecard System) and change the punch in and punch out times of the delivery drivers. This illegal act reduces the drivers daily and weekly hours worked. The drivers would then have to beg and plead with their supervisors and managers to pay them for their time. Unfortunately for them the payments never came.

50. In regard to the DOT violations, Plaintiff Murray has evidence to show countless hours of DOT hour manipulation. Time that was stolen is a pattern and practice of the company and its management team to manipulate the DOT rules and regulations.

51. Willie Gray and other senior managers knowingly and willfully require the class as well as, on the road supervisors or work beyond their allotted DOT hours.

52. In addition to the DOT violations of the delivery drivers, Willie Gray and UPS senior management violated the DOT hours of the on the road supervisors as well.

53. On the road supervisors do not punch in or punch out. Their DOT hours are untraceable; therefore, the on-road supervisors are subjected to abuse by Willie Gray and the UPS senior management. On the road supervisors often work 15-18-hour shifts.

54. In addition to his firsthand knowledge of UPS's DOT violations, and the overtime theft committed against the delivery driver, Mr. Murray was a victim of wage discrimination.

55. Mr. Murray earned $80,000.00 base salary as a an on the road supervisor while his Caucasian male counterpart, Patrick Scanlon ("Scanlon"), earned over $100,000.00 base salary. Mr. Murray trained Scanlon when Scanlon began his career at UPS.

56. When Mr. Scanlon was hired, he was a new driver trainee. Pursuant to the UPS's policy, new driver trainees are on probation and are required to stay accident free. While in training Mr.

Scanlon ran into the back of Mr. Murrays vehicle while Mr. Murrays vehicle was parked on the street. Mr. Scanlon was not fired or reprimanded by UPS. In fact, UPS instructed Mr. Murray not to make a big deal about the accident and intimidated him out of contacting his insurance carrier. Murray was left with thousands of dollars' worth of damage to his vehicle. Damages that still exist today.

57. Mr. Murrays vehicle was not the only vehicle Mr. Scanlon hit. Throughout his time with UPS, Mr. Scanlon ran into several vehicles. None of the accidents were ever reported to the insurance carrier by UPS. With this track record one would assume that Mr. Scanlon would be out of a job, but when you're Caucasian and male, you don't get fired you get promoted within UPS.

58. Shortly after joining the company and crashing into several cars, Mr. Scanlon was promoted by UPS to supervisor.

59. UPS engaged in egregious race and color discrimination when they terminated Mr. Murray.

60. Mr. Murray was a whistleblower who exposed the activities of Willie Gray and UPS senior management during an investigation surrounding a failed car accident coverup.

61. Mr. Murray has evidence of many Caucasian on the road supervisors and division managers committing egregious and ethically flawed acts. Actions that UPS senior management is well Willie Gray, was aware of. These Caucasian on the road supervisors and division managers have never been terminated. In fact, they were either reassigned to different location, or transferred to different areas or buildings.

62. Additionally, Willie Gray and UPS senior management consistently denied African American on the road supervisors request to transfer out of their location. Mr. Murray knows of countless African American on the road supervisors who have made formal transfer request to locations and positions that they were qualified for, and they were told they "Fit" the demographics of their current coverage area[1] better. For example, Orane (an African American male) was denied a transfer request to Pennsylvania. A Caucasian male with less experience and qualifications made the same transfer request and it was granted. Malcom (an African American male) made a transfer request and it was denied. A Caucasian male who was less qualified and less experienced made the same request and it was granted.

---

[1] Their coverage area is predominantly African American. Their coverage area is comprised of housing projects, narrow poorly kept streets, and are full of violence.

8

63. Mr. Murray has evidence of Willie Gray and UPS senior management engaging in workplace intimidation to end DOT violation complaints on behalf of the on the road supervisors who were working 17 hours shifts.

64. Mr. Murray has evidence of Willie Gray and UPS senior management engaging in workplace intimidation of supervisors by threatening to write them up and terminate them if they did not use their personal vehicles to deliver UPS packages. On the road supervisors use of their personal vehicles to deliver packages is a violation of the collective bargaining agreement.

65. Mr. Murray has evidence of Willie Gray and UPS senior management engaging in workplace intimidation of the truck delivery drivers. Threatening to fire them if they complained about the overtime theft they experienced when they worked 15 to 17-hour days.

66. Mr. Murray has evidence of Willie Gray and UPS senior management engaging in workplace intimidation of the package truck drivers and supervisors by forcing the package truck drivers to pay out of pocket for car accidents, as oppose to reporting the accidents to UPS insurance carrier.

67. Mr. Murray has evidence of Willie Gray and UPS senior management engaging in workplace intimidation of the supervisors by failing to report countless automobile accidents and forcing them to manipulate the accident scenes in order to decrease the company's insurance liability.

68. Mr. Murray has evidence of Willie Gray and UPS senior management engaging in workplace intimidation of the drivers and workers who were injured on the job by prohibiting them from visiting their personal doctors and forcing them to visit designated "company medical experts" who would misdiagnose them. Willie Gray would send on the road supervisors with the drivers to his medical experts and have the experts downplay the severity of the injury and designate the worker as being able to work on light duty.

69. Mr. Murray has evidence of Willie Gray and UPS senior management engaging in workplace intimidation of the supervisors and drivers by making them scan packages as if a valid delivery attempt was made to the package delivery address, when no attempt was made, in order to avoid a missed delivery.

70. Mr. Murray has evidence of Willie Gray and UPS senior management engaging in workplace intimidation of the delivery by making them implement a negligent "Driver Release" policy. This policy forces the drivers to leave packages in high risk areas. Drivers are then terminated as a result of this policy if a package is stolen.

71. Mr. Murray has evidence of Willie Gray and UPS senior management engaging in workplace intimidation by forcing supervisors to use their personal vehicles to deliver packages. During one of these deliveries Mr. Murrays vehicle was hit, and Willie Gray refused to report it to the insurance carrier. Instead Willie Gray and UPS senior management bullied Mr. Murray into keeping silent.

72. Mr. Murray has evidence of Willie Gray and UPS senior management engaging in workplace intimidation by prohibiting the submissions of gasoline expense reports or change the gasoline expense reports submitted by the on the road supervisors. Willie Gray and UPS Management would also reduce the number of miles reported by the on the road supervisors so it would not look bad on the expense reports.

*Plaintiff Palagoachi*

73. Plaintiff Palagoachi's work duties required neither discretion nor independent judgment.

74. Throughout his employment with Defendants, Plaintiff Palagoachi regularly worked in excess of forty (40) hours per week.

75. From Approximately October 2017 until May 2018, Plaintiff Palagoachi worked as a package delivery driver from approximately 8:00 a.m. until on or about 11:00 pm., Sunday through Friday typically 90 hours per week.

76. Throughout his employment, Defendants paid Plaintiff Palagoachi his wages through check or direct deposit.

77. Plaintiff Palagoachi's pay did not vary even when he was required to start earlier or work a longer day than his usual schedule. For example, Defendants required Plaintiff Palagoachi to start work hours earlier or work longer days when there was a shortage of staff and did not pay him overtime pay for the additional time he worked.

78. Plaintiff Palagoachi kept track of the hours he worked because it is reflected on his pay stubs under the "hours" column. Defendants utilizes a time tracking device, such as punch cards.

79. Notifications in the form of posted notices and written correspondences, was not given to Plaintiff Palagoachi regarding overtime and wages under the FLSA and NYLL.

80. Defendants did not provide Plaintiff Palagoachi an accurate statement of wages, as required by NYLL 195(3).

81. Plaintiff Palagoachi is prepared to prove that Willie Gray and UPS Senior management instructed him to hide numerous automobile accidents.

82. Plaintiff Palagoachi is prepared to prove that Willie Gray and UPS Senior management instructed him to lie about delivery records like missed packages, and falsely manipulating delivery attempts. The scheme Mr. Palagoachi was required to employ is a follow: he was instructed to go close to the customers home, scan the package, and place the package in the truck even if Mr. Palagoachi never made the delivery attempt.

*Plaintiff Payne*

83. Plaintiff Payne's work duties required neither discretion nor independent judgment.

84. Throughout his employment with Defendants, Plaintiff Payne regularly worked in excess of forty (40) hours per week.

85. From Approximately August 2017 until June 2018, Plaintiff Payne worked as a package delivery driver from approximately 8:00 a.m. until on or about 11:00 pm., Sunday through Friday typically 90 hours per week.

86. Throughout his employment, Defendants paid Plaintiff Payne his wages through check or direct deposit.

87. Plaintiff Payne's pay did not vary even when he was required to start earlier or work a longer day than his usual schedule. For example, Defendants required Plaintiff Payne to start work hours earlier or work longer days when there was a shortage of staff and did not pay him overtime pay for the additional time he worked.

88. Plaintiff Payne kept track of the hours he worked because it is reflected on his pay stubs under the "hours" column. Defendants utilizes a time tracking device, such as punch cards.

89. Notifications in the form of posted notices and written correspondences, was not given to Plaintiff Payne regarding overtime and wages under the FLSA and NYLL.

90. Defendants did not provide Plaintiff Payne an accurate statement of wages, as required by NYLL 195(3).

91. Plaintiff Payne is prepared to prove that Willie Gray and UPS Senior management instructed him to hide numerous automobile accidents.

92. Plaintiff Payne is prepared to prove that Willie Gray and UPS Senior management instructed him to lie about delivery records like missed packages, and falsely manipulating delivery attempts. The scheme Plaintiff Payne was required to employ is a follow: he was instructed to

go close to the customers home, scan the package, and place the package in the truck even if Plaintiff Payne never made the delivery attempt.

*Defendants' General Employment Practices*

93. At all-times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiff's and all similarly situated employees, to work in excess of 40 hours a week without paying them appropriate overtime compensation as required by federal and state laws.

94. Plaintiffs are victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they are owed for the hours they worked.

95. Defendants habitually require Plaintiff's to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

96. Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiff's, and all similarly situated employees, worked, and to avoid paying Plaintiff's and all similarly situated employees properly for their full hours worked.

97. Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

98. After the fatal accident involving a Walmart delivery truck driver and comedian Tracy Morgan, one would think companies like Defendants would take DOT rules and regulations seriously. Unfortunately, Defendant does not. In the face of this tragic accident, Defendant has decided to put profits over people. Instead of putting safety first, Defendant prefers to manipulate the DOT hours of their employees and endanger the lives of their employees and the general public.

99. Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiff's and all similarly situated current and former employees.

## FLSA COLLECTIVE ACTION CLAIMS

100.    Plaintiff's bring this FLSA overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated employees (the "FLSA Class Members"), i.e., persons who are or were employed by

Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

101.    At all relevant times, Plaintiff's and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records required by the FLSA.

102.    The claims of Plaintiff's stated herein are similar to those of the other employees.

## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 CLAIMS

103.    Defendants have engaged in egregious acts of race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended.

104.    Plaintiffs willfully and intentionally pay Caucasian employees substantially more, than they pay non-Caucasian employees who perform the same job under similar circumstances, regardless of experience or qualifications.

105.    Plaintiffs can point to no legitimate factor such as a, seniority system, merit system, productivity system, or any factor other than race and gender, to excuse their blatant acts of wage discrimination.

106.    Not only do Plaintiffs commit gender and race discrimination in violation of Title VII of the Civil Rights Act of 1964, they also retaliate against employees who are courageous enough to speak up and demand equality.

107.    Plaintiff Palagoachi, Plaintiff Murray, and Plaintiff Payne have all been victim of Defendant's retaliation.

## FIRST CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT-OVERTIME WAGES
### (Brought on behalf of Plaintiff's and the Rule 23 Class)

108.    Plaintiff Payne and Plaintiff Palagoachi repeats and realleges all paragraphs above as though fully set forth herein.

109.   The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, apply to Defendants and protect Plaintiff's and the FLSA Class members.

110.   Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiff's and the FLSA Class Members overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

111.   Defendants' failure to pay Plaintiff's and the FLSA Class members, overtime compensation was willfully within the meaning of 29 U.S.C. § 255(a).

112.   As a result of Defendants' willful violations of the FLSA, Plaintiff's and the FLSA class members have suffered damages by being denied overtime compensation in amounts to be determined at trial, and are entitled to recovery to such amounts, liquidated damages, prejudgment interest, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq*.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE OVERTIME PROVISIONS
## OF THE NEW YORK STATE LABOR LAW
### (Brought on behalf of Plaintiff's and the Rule 23 Class)

113.   Plaintiff Payne and Plaintiff Palagoachi and all similarly situated employees, repeats and realleges all paragraphs above as though fully set forth herein.

114.   Defendants, in violation of N.Y. Lab. Law § 190 et seq., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiff's and all similarly situated employees, overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a work week.

115.   Defendants' failure to pay Plaintiff's and all similarly situated employees, overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

116.   Plaintiff's and all similarly situated employees, are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

## THIRD CAUSE OF ACTION

**VIOLATION OF THE TIMELY PAYMENT PROVISIONS**

**OF THE NEW YORK LABOR LAW**

**(Brought on behalf of Plaintiff's and the Rule 23 Class)**

117.    Plaintiff Payne and Plaintiff Palagoachi and all similarly situated employees, repeats and realleges all paragraphs above as though set forth fully herein.

118.    Defendants did not pay Plaintiff's, and all similarly situated employees, on a weekly basis in violation of NYLL § 191.

119.    Defendants are liable to Plaintiff's and all similarly situated employees, in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF THE SPREAD OF HOURS WAGE ORDER**

**OF THE NEW YORK COMMISSIONER OF LABOR**

**(Brought on behalf of Plaintiff's and the Rule 23 Class)**

120.    Plaintiff Payne and Plaintiff Palagoachi and all similarly situated employees, repeats and realleges all paragraphs above as though fully set forth herein.

121.    Defendants failed to pay Plaintiff's and all similarly situated employees, one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiff's and all similarly situated employees, spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq.* and 12 N.Y.C.R.R. §§ 146-1.6.

122.    Defendants' failure to pay Plaintiff's and all similarly situated employees, an additional hour's pay for each day Plaintiff's and all similarly situated employees, spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

123.    Plaintiff's and all similarly situated employees, was damaged in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**

**VIOLATION OF THE NOTICE AND RECORDKEEPING**

**REQUIREMENTS OF THE NEW YORK LABOR LAW**

**(Brought on behalf of Plaintiff's and the Rule 23 Class)**

124.    Plaintiff Payne and Plaintiff Palagoachi and all similarly situated employees, repeats and realleges all paragraphs above as though fully set forth herein.

125.    Defendants failed to provide Plaintiff's and all similarly situated employees, with a written notice, in English and in Spanish (Plaintiff's Palagoachi primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and tighten telephone number of the employer, as required by NYLL § 195(1).

126.    Plaintiff's and all similarly situated employees are damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
## VIOLATION OF THE WAGE STATEMENT PROVISIONS
## OF THE NEW YORK LABOR LAW
### (Brought on behalf of Plaintiff's and the Rule 23 Class)

127.    Plaintiff Payne and Plaintiff Palagoachi and all similarly situated employees, repeats and realleges all paragraphs above as though fully set forth herein.

128.    With each payment of wages, Defendants failed to provide Plaintiff's and all similarly situated individuals, with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay as basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL § 195(3).

129.    Due to Defendants' violation of NYLL, Article 6, § 195(3), Plaintiff's and all similarly situated employees, are entitled to statutory penalties of two hundred fifty dollars for each workweek that Defendants failed to provide them with accurate wage statements, or a total of

five thousand dollars, and reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198(1-d).

## SEVENTH CAUSE OF ACTION
### VIOLATION OF FEDERAL EQUAL PAY LAW
### UNDER THE EQUAL PAY ACT OF 1963
**(Brought on behalf of Plaintiff Payne)**

130.    Plaintiff Murray and all similarly situated employees, repeats and realleges all paragraphs above as though fully set forth herein.

131.    At all times relevant to this action, Defendants was Plaintiff Murray, and all similarly situated employees, employers within the meaning of § 1620.8 of the Equal Pay Act. Defendants had power to hire and fire Plaintiff Murray, and all similarly situated employees, control the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

132.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce. Defendants constitute an enterprise within the meaning of § 1620.7(b) of the Equal Pay Act.

133.    Defendants failed to pay Plaintiff Murray, and all similarly situated employees, equally with their female on the road supervisors who's jobs the performance of which requires equal skill, effort and responsibility and which are performed under similar working conditions, in violation of § 1620.13 of the Equal Pay Act.

134.    Defendants' failure to pay Plaintiff Murray, and all similarly situated employees, equally with their female coworkers was willful within the meaning of § 1620.33(c) of the Equal Pay Act.

135.    Plaintiff Murray, and all similarly situated employees, was damaged in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
**(Brought on behalf of Plaintiff Murray and the Rule 23 Class)**

136.    Plaintiff Murray and all similarly situated employees, repeats and realleges all paragraphs above as though fully set forth herein.

137.    At all relevant times, Plaintiff's and all similarly situated employees, have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully engaging in conduct that violates the Civil Rights Act of 1964 § 701 et seq., 42 U.S.C.A. § 2000e *et seq*.

138.    This claim is authorized and instituted pursuant to Title VII of the Civil Rights Act, 42 U.S.C.§2000e *et seq*., based upon the discriminatory employment practices of Defendants. Specifically, Plaintiff's complains that Defendants discriminated against them in wages based upon their race and gender, causing them to suffer substantial injury and damages.

139.    Upon information and belief, Plaintiff Murray and all similarly situated employees, are paid less than the rate at which their similarly situated Caucasian colleagues are paid for a job requiring equal skill and performed under similar working conditions.

140.    In addition, upon information and belief, Plaintiff Murray and similarly situated employees, were offered less than the rate at which their similarly situated Caucasian colleagues are paid for a job requiring equal skill and performed under similar working conditions.

141.    Defendants' failure to pay Plaintiff Murray and all similarly situated employees, equally with their Caucasian coworkers was based on the Defendants disdain for Plaintiffs race and gender, in violation of Title VII of the Civil Rights Act, 42 U.S.C.§2000e *et seq*.

142.    Plaintiff Murray, and all similarly situated employees are damaged in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff's respectfully requests that this Court enter judgment against Defendants by:

a) Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

b) Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff's and the FLSA Class members;

c) Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff's and the FLSA Class members;

d) Declaring that Defendants violated the record keeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiff's and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

e) Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiff 's and the FLSA Class members;

f) Awarding Plaintiff's and the FLSA Class Members damages for the amount of unpaid minimum wages, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

g) Awarding Plaintiff's and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

h) Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiff's and all similarly situated employees;

i) Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiff's and all similarly situated employees;

j) Declaring that Defendants violated the timely payment provisions of, and rules and orders promulgated under, the NYLL as to Plaintiff's and all similarly situated employees;

k) Declaring that Defendants violated the notice and record keeping requirements of the NYLL with respect to Plaintiff's and all similarly situated employee's compensation, hours, wages and any deductions of credits taken against wages;

l) Declaring that Defendants' violations of the New York Labor Law and spread of hour wages order were willful as to Plaintiff's and the FLSA Class members;

m) Declaring that Defendants violated the federal Equal Pay Act of 1963 with respect to Plaintiff Murray and all similarly situated employees, compensation, hours, wages and any deductions of credits taken against wages;

n) Declaring that Defendants' violations of the federal Equal Pay Act of 1963 was willful as to Plaintiff Murray, and all similarly situated employees;

o) Declaring that Defendants violated Title VII of the Civil Rights Act of 1964 with respect to Plaintiff's and all similarly situated employee's compensation, hours, wages and any deductions of credits taken against wages;

p) Declaring that Defendants' violations of Title VII of the Civil Rights Act of 1964 were willful as to Plaintiff's and all similarly situated employees;

q) Awarding Plaintiff's and all similarly situated employees' damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread hours pay under the NYLL as applicable;

r) Awarding Plaintiff's and all similarly situated employees' damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§ 198(1-b), 198(1-d);

s) Awarding Plaintiff's liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

t) Awarding Plaintiff's and the FLSA Class members pre-judgment and post-judgment interest as applicable;

u) Awarding Plaintiff's and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

v) Award Plaintiff Murray, and all others similarly situated employees the value of all compensation and benefits lost and that they will lose in the future as a result of Defendants' unlawful conduct that violated the federal and state Equal Pay laws;

w) Award Plaintiff's, and all others similarly situated compensatory and punitive damages that stem from Defendants' violation of federal and state Equal Pay laws;

x) Award Plaintiff Murray, and all others similarly situated employees the value of all compensation and benefits lost and that they will lose in the future as a result of Defendants' unlawful conduct that violated Title VII of the Civil Rights Act of 1964;

y)  Award Plaintiff Murray, and all others similarly situated compensatory and punitive damages that stem from Defendants' violation of Title VII of the Civil Rights Act of 1964;

z)  Award Plaintiffs and all others similarly situated prejudgment interest and attorneys' fees, costs and disbursements, as provided by law;

aa) Providing that if any amounts remain unpaid upon the expiration of ninety (90) days following issuance of judgment, or ninety (90) days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen (15%) percent, as required by NYLL § 198(4); and

bb) All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff 's and all similarly situated employees, demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
March 17, 2020

By:  Tyrone A. Blackburn, Esq.

        /s/ Tyrone Blackburn
Tyrone A. Blackburn, Esq.
Attorney for Plaintiffs
1242 E. 80th Street, 3rd Floor
Brooklyn, New York 11236
Telephone: (347) 342-7432